We determined above that Melanie had a legitimate reason to leave the State of Nebraska and provided sufficient evidence that removal was in Kendra's best interests. Therefore, we reverse the trial court's custody determination and reinstate the custody determination set forth in the decree.

## VI. CONCLUSION

We conclude the district court abused its discretion in determining that Melanie's acceptance of a job in New Mexico did not constitute a legitimate reason to leave the state. Upon our de novo review and after consideration of various relevant factors, we find that removing Kendra to New Mexico is in her best interests. Accordingly, we reverse the court's order denying Melanie's complaint to modify and the court's modification of custody. We order legal custody of Kendra to be held jointly by the parties and order physical custody be restored to Melanie. We remand for further proceedings consistent with our opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

---

STATE OF NEBRASKA, APPELLEE, V.
LARRY LEE RUEGGE, APPELLANT.
___ N.W.2d ___

Filed September 10, 2013.    No. A-12-550.

1. **Convictions: Evidence: Appeal and Error.** Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same: In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction.

2. **Trial: Prosecuting Attorneys.** Whether prosecutorial misconduct is prejudicial depends largely on the facts of each case.

3. **Motions for New Trial: Prosecuting Attorneys: Appeal and Error.** An appellate court reviews a motion for new trial on the basis of prosecutorial misconduct for an abuse of discretion by the trial court.

4. **Attorneys at Law: Motions for Mistrial: Verdicts: Appeal and Error.** A party may not raise alleged misconduct of adverse counsel on appeal where, despite knowledge of the alleged misconduct, the party claiming the misconduct failed to request a mistrial and instead agreed to take his or her chance on a favorable verdict.

5. **Trial: Appeal and Error.** On appeal, a defendant may not assert a different ground for an objection than was offered to the trier of fact.

6. **Trial: Attorneys at Law.** One is allowed considerable latitude in making an opening statement.

7. **Trial: Appeal and Error.** An objection to the prosecutor's argument made after the jury has been instructed and has retired is untimely and for that reason will not be reviewed on appeal.

8. **Records: Appeal and Error.** It is incumbent upon an appellant to present a record which supports the errors assigned.

9. **Jury Instructions: Appeal and Error.** Whether jury instructions are correct is a question of law, which an appellate court resolves independently of the lower court's decision.

10. **Jury Instructions: Proof: Appeal and Error.** To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction.

11. **Theft: Words and Phrases.** The term "knowing," as used in Neb. Rev. Stat. § 28-517 (Reissue 2008), imposes a subjective standard of knowledge.

12. **Effectiveness of Counsel: Proof.** To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced his or her defense.

13. ____: ____. The two-prong ineffective assistance of counsel test need not be addressed in order.

14. **Effectiveness of Counsel: Presumptions.** When considering whether trial counsel's performance was deficient, there is a strong presumption that counsel acted reasonably.

15. **Trial: Attorneys at Law: Effectiveness of Counsel: Appeal and Error.** Trial counsel is afforded due deference to formulate trial strategy and tactics. When reviewing a claim of ineffective assistance of counsel, an appellate court will not second-guess reasonable strategic decisions by counsel.

16. **Effectiveness of Counsel: Appeal and Error.** A claim of ineffective assistance of counsel need not be dismissed merely because it is made on direct appeal.

17. **Trial: Prosecuting Attorneys.** Generally, in assessing allegations of prosecutorial misconduct in closing arguments, a court first determines whether the prosecutor's remarks were improper. It is then necessary to determine the extent to which the improper remarks had a prejudicial effect on the defendant's right to a fair trial.

18. **Motions for Mistrial.** A mistrial is appropriate when an event occurs during the course of a trial which is of such a nature that its damaging effects would prevent a fair trial.

19. **Trial: Attorneys at Law.** The decision about whether to make an objection during a trial has long been considered an aspect of trial strategy.
20. ____: ____. A decision not to object could be explained by trial counsel's calculated strategy not to highlight the objectionable material.

Appeal from the District Court for Holt County: Mark D. Kozisek, Judge. Affirmed.

Michael S. Borders, of Borders Law Office, for appellant.

Jon Bruning, Attorney General, and George R. Love for appellee.

Inbody, Chief Judge, and Irwin and Moore, Judges.

Irwin, Judge.

## I. INTRODUCTION

Larry Lee Ruegge was convicted by a jury of theft by receiving stolen property. The district court subsequently found Ruegge to be a habitual offender and sentenced him to 10 years' imprisonment. Ruegge appeals from his conviction for theft by receiving stolen property. On appeal, Ruegge assigns numerous errors, including that there was insufficient evidence to support his conviction, that the State committed various instances of misconduct, and that the district court erred in failing to amend a certain jury instruction pursuant to Ruegge's request. Ruegge also alleges that he received ineffective assistance of trial counsel.

Upon our review, we find no merit to Ruegge's assertions on appeal. Accordingly, we affirm his conviction for theft by receiving stolen property.

## II. BACKGROUND

The State filed a criminal complaint charging Ruegge with theft by receiving stolen property pursuant to Neb. Rev. Stat. § 28-517 (Reissue 2008). Later, the State filed an amended complaint which charged Ruegge with being a habitual offender pursuant to Neb. Rev. Stat. § 29-2221 (Reissue 2008), in addition to the original charge of theft by receiving stolen property.

The theft by receiving stolen property charge stems from events which occurred in November and December 2010.

Evidence adduced at trial revealed that sometime during this time period, a flatbed trailer was stolen from Scribner Grain. Bolted to the flatbed trailer when it was stolen were various tools, including a generator/welder, an air compressor, a power washer, and some smaller hand tools. In the early part of December, an employee of Scribner Grain observed in the back of a pickup truck the generator/welder that had been stolen with the flatbed trailer. The employee followed the pickup truck to a local salvage yard, where it was discovered that the generator/welder was, in fact, the same generator/welder that had previously been stolen from Scribner Grain.

At trial, the State presented evidence to demonstrate that Ruegge had been in possession of the stolen generator/welder and had traded it, knowing that it was stolen, to the owner of the salvage yard, Richard Vande Mheen. Vande Mheen testified that on November 26, 2010, Ruegge came to Vande Mheen's home with the generator/welder and proposed a trade. Ruegge gave Vande Mheen the generator/welder in exchange for a snowmobile. Vande Mheen testified that Ruegge told him that he had purchased the generator/welder "when he was repairing irrigation systems."

When Vande Mheen was informed that the generator/welder had been stolen, he told police that he had gotten the tool from Ruegge. Vande Mheen then informed Ruegge that the police were asking about the generator/welder. Ruegge told Vande Mheen that if he did not tell police where he had gotten the tool, Ruegge would "make it worth [his] while." Ruegge also told Vande Mheen that he should tell police that the tool had "come in in a load of iron."

The State also presented evidence to demonstrate that the value of the generator/welder was approximately $2,500.

Ruegge's defense focused almost primarily on discrediting Vande Mheen's testimony. Through his cross-examination of the State's witnesses, Ruegge attempted to demonstrate that no one actually saw Ruegge with the generator/welder except for Vande Mheen and that Vande Mheen was simply not a credible witness, because he had a reason to lie to the police and to the jury, that is, he knew the tool was stolen when he obtained it. Ruegge also elicited testimony from the State's witnesses to

establish that Vande Mheen had actually obtained the stolen generator/welder from someone other than Ruegge.

After hearing all of the evidence, the jury convicted Ruegge of theft by receiving stolen property. The district court subsequently found Ruegge to be a habitual criminal and sentenced him to 10 years' imprisonment.

Ruegge appeals his conviction here.

## III. ASSIGNMENTS OF ERROR

On appeal, Ruegge assigns 11 errors, which we consolidate to 4 errors for our review. Ruegge first alleges that the evidence was insufficient to support his conviction. He also alleges that the State committed various instances of misconduct during voir dire and its opening and closing statements. He alleges that the district court erred by denying his request for a specific jury instruction. Finally, Ruegge asserts that he received ineffective assistance of trial counsel.

## IV. ANALYSIS

### 1. Sufficiency of Evidence

Ruegge alleges that the State presented insufficient evidence to prove beyond a reasonable doubt that he was ever in possession of the stolen generator/welder. Ruegge also alleges that the district court erred in overruling his motion for a directed verdict which was based upon insufficiency of the evidence. Upon our review, we conclude that the evidence was sufficient to support the conviction for theft by receiving stolen property and that, accordingly, the district court did not err in overruling Ruegge's motion for a directed verdict.

### (a) Standard of Review

[1] Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same: In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed,

in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. France*, 279 Neb. 49, 776 N.W.2d 510 (2009).

### (b) Analysis

Ruegge was charged with and convicted of theft by receiving stolen property pursuant to § 28-517. Section 28-517 provides: "A person commits theft if he receives, retains, or disposes of stolen movable property of another knowing that it has been stolen, or believing that it has been stolen, unless the property is received, retained, or disposed with intention to restore it to the owner."

At trial, the State presented the testimony of Vande Mheen to establish that Ruegge was in possession of the generator/welder and that he "disposed" of the generator/welder by trading it to Vande Mheen for a snowmobile. Vande Mheen testified that Ruegge brought the generator/welder to his home and offered Vande Mheen the tool as part of a trade. Vande Mheen accepted Ruegge's offer and took possession of the generator/welder.

The State also presented evidence to establish that Ruegge knew the generator/welder was stolen at the time he traded the tool to Vande Mheen. Vande Mheen testified that Ruegge told him that he had previously purchased the generator/welder to assist him in the repair of irrigation systems. Other evidence suggested Ruegge's statement to be untrue, because the generator/welder had belonged only to Scribner Grain prior to being stolen. Additionally, Vande Mheen testified that Ruegge told him to lie to police about where he had obtained the generator/welder. Ruegge told Vande Mheen to tell police that he had gotten the tool in a load of iron. Such evidence suggests that Ruegge knew the generator/welder was stolen and that he did not want to get into trouble for trading the stolen property to Vande Mheen.

The evidence presented by the State, if believed by the jury, was sufficient to establish that Ruegge was guilty of theft by receiving stolen property.

On appeal, Ruegge argues that Vande Mheen's testimony is not credible and, as such, is insufficient to establish Ruegge's guilt beyond a reasonable doubt. Specifically, Ruegge argues, "Vande Mheen is the only one that explains where he got the property and blamed it on [Ruegge]." Brief for appellant at 11. He goes on to assert that Vande Mheen's "conflicts of interest are overwhelming for him to blame someone else and get the law enforcement off of his own back." *Id*.

Ruegge's arguments on appeal focus on the credibility of Vande Mheen. However, the jury, as the fact finder, clearly found Vande Mheen's testimony to be credible, and we, as an appellate court, do not pass on the credibility of witnesses. See *State v. France, supra*. The jury convicted Ruegge of theft by receiving stolen property based on the testimony of Vande Mheen. And, as we discussed above, the jury was aware of Ruegge's belief that Vande Mheen was lying in order to ensure that he was not also charged with a crime for being in possession of the stolen property.

Because the jury as the trier of fact could have found the essential elements of theft by receiving stolen property beyond a reasonable doubt based on Vande Mheen's testimony, the evidence was sufficient to support Ruegge's conviction. The district court did not err in overruling Ruegge's motion for a directed verdict, and Ruegge's assertions to the contrary have no merit.

## 2. Prosecutorial Misconduct

Ruegge alleges that he is entitled to a new trial based upon prosecutorial misconduct which occurred during voir dire, during the State's opening statement, and during the State's closing argument. Upon our review, we conclude that Ruegge's numerous assertions concerning prosecutorial misconduct are without merit.

### (a) Standard of Review

[2,3] Whether prosecutorial misconduct is prejudicial depends largely on the facts of each case. *State v. Faust*, 269 Neb. 749, 696 N.W.2d 420 (2005). An appellate court reviews a motion for new trial on the basis of prosecutorial misconduct

for an abuse of discretion by the trial court. *State v. Castor*, 257 Neb. 572, 599 N.W.2d 201 (1999).

### (b) Voir Dire

Ruegge alleges that the State committed misconduct during voir dire. Specifically, he alleges that the State committed misconduct when the prosecutor informed the jury that as a prosecutor, it is his job to be impartial to the people of Nebraska and the people of Holt County; when the prosecutor referred to "'Tri-County Bank'" as "'Brewster's Bank'" (Steven Brewster was defense counsel during trial); when the prosecutor asked jurors whether they had the "nerve to admit" that they hate police officers; and when the prosecutor referred to Scribner Grain as the "victim" in this case. Brief for appellant at 13.

[4] A party may not raise alleged misconduct of adverse counsel on appeal where, despite knowledge of the alleged misconduct, the party claiming the misconduct failed to request a mistrial and instead agreed to take his or her chance on a favorable verdict. See *State v. Anderson and Hochstein*, 207 Neb. 51, 296 N.W.2d 440 (1980).

Despite Ruegge's assertions on appeal that the State committed multiple instances of misconduct during voir dire, he did not specifically object to any of the comments made by the prosecutor during voir dire, nor did he make a motion for a mistrial as a result of any of these instances. Because Ruegge failed to object to the State's conduct during voir dire and failed to make a motion for a mistrial, we conclude that Ruegge failed to preserve for appellate review his assertions concerning the State's misconduct during voir dire.

### (c) Opening Statement

Ruegge alleges that the State committed misconduct during its opening statement. Specifically, he alleges that the State committed misconduct when the prosecutor discussed a line of inquiry conducted by defense counsel during voir dire which questioned the potential jurors' opinions about the credibility of witnesses who have been given immunity. Ruegge goes on to allege that the prosecutor committed misconduct when he told the jury during his opening statement that he was no

longer planning on presenting the testimony of any witness who had been given immunity.

During voir dire, defense counsel questioned each potential juror individually about his or her opinion concerning the credibility of a witness who has been given immunity against prosecution from certain crimes in exchange for his testimony. Defense counsel initiated this conversation by explaining to the jury pool:

> Well, it's always difficult because we don't always know for sure what the testimony and what the evidence will be, but we think we know. And so what we're trying to do is make sure that given — anticipating what that might be, that you feel comfortable that you can be fair and impartial. And that's what the real goal is here.
>
> And so, the next topic that I want to talk about is an idea called . . . immunity, meaning they won't be prosecuted for any crimes or certain crimes, maybe, that they may have committed, in exchange for them testifying.

During defense counsel's questioning of the potential jurors, many of the members on the panel expressed some discomfort in accepting or believing the testimony of someone who had been provided with immunity in exchange for his testimony.

After the parties selected a jury, the prosecutor gave an opening statement. During that statement, the prosecutor told the jury:

> Now, after listening to two hours about what you folks think about lies and immunity, I've decided I won't call anybody that's been given immunity. I don't need it. If I think I need it, I'll call them and I'll inform you if I put on anybody that's been granted any form of immunity or not.
>
> But because I felt that my witness had been somehow diminished by the questioning and the ill informed —

At this point in the prosecutor's opening statement, defense counsel made an objection and asked to be heard by the court. The parties and the trial judge then proceeded to have a discussion in the judge's chambers and outside the presence of the jury.

During the in-chambers discussion, defense counsel argued that the prosecutor's comments were "outside of the scope of [an] opening statement." Defense counsel believed that the prosecutor was "making an argument rather than presenting what the evidence will be."

The court disagreed with defense counsel's assertions. The court stated:

> Well, [the prosecutor is] explaining. You no doubt spent a considerable amount of time dealing with [the witness who was given immunity] and his shortcomings, and I think that the county attorney should be allowed to address that in his opening statement, because he's no longer going to call him, and I think he's entitled to tell the jury why he's not going to call him.
>
> . . . .
>
> . . . I think [that during an opening statement] you can tell what you're not going to have, you can tell what you're going to have.

The court told defense counsel that the "[o]bjection's noted" and permitted the prosecutor to continue with his opening statement. The prosecutor then informed the jury about the witnesses he planned on calling to testify and about what he believed the evidence would show.

[5] On appeal, Ruegge argues that the prosecutor committed misconduct during his opening statement by discussing the potential witness who had been given immunity. However, at trial, Ruegge did not argue that this discussion constituted misconduct, nor did he request a mistrial as a result of the prosecutor's discussion. Instead, Ruegge objected on the basis that the prosecutor's comments were outside the scope of an opening statement. On appeal, a defendant may not assert a different ground for an objection than was offered to the trier of fact. See *State v. Muse*, 15 Neb. App. 13, 721 N.W.2d 661 (2006). Because Ruegge did not object to the prosecutor's statements on the basis of prosecutorial misconduct and because he did not make a motion for a mistrial as a result of the prosecutor's statements, we conclude that he has waived appellate review of this issue.

However, to the extent that Ruegge suggests that the district court erred in overruling his objection to the prosecutor's comments because the comments were not properly included in an opening statement, we conclude that Ruegge's assertion has no merit.

[6] The Nebraska Supreme Court has previously held that "one is allowed considerable latitude in making an opening statement." *State v. Bradley*, 236 Neb. 371, 401, 461 N.W.2d 524, 544 (1990). In this case, a majority of the prosecutor's opening statement was dedicated to telling the jury what evidence would be presented during the trial. However, prior to this recitation, the prosecutor informed the jury that he would no longer be calling any witness who had been given immunity. The prosecutor's comments on this subject were clearly a response to defense counsel's thorough and detailed discussion with the jury about the credibility of such witness testimony. The prosecutor did not tell the jury anything about the witness in question, nor did he relay anything about what that witness would have testified to if he had been called to the stand. The prosecutor's comments were not inappropriate or outside the scope of an opening statement, and we do not find that the district court erred in overruling Ruegge's objection to the comments.

### (d) Closing Argument

Ruegge alleges that the State committed misconduct during its closing argument. Specifically, he alleges that the State committed misconduct when the prosecutor discussed the "chaos and anarchy" that would result from the improper use of the legal system, when the prosecutor informed the jury that he represents "the people," when the prosecutor discussed a witness who did not testify at the trial, when the prosecutor told the jury that defense counsel is using a "standard tactic" in blaming someone else for the crime, when the prosecutor accused defense counsel of "lying" during his closing argument, and when the prosecutor told the jurors to "do the right thing" so that they are "fine" when they go home after the trial. Brief for appellant at 15-17.

### (i) Discussion of Witness Who
### Did Not Testify at Trial

During the State's closing argument, the prosecutor reiterated the statements he made during his opening statement concerning why he did not offer the testimony of any witness who had been given immunity. The prosecutor stated:

> Now, first of all, it was my intention to put on another witness yesterday. But, after hearing all that talk from all of the prospective jurors about how you would not give credence to a person who had been granted immunity in exchange for his testimony, I put that to one side. I'm not going to belabor you with the testimony of a person that you've already told me you won't pay any attention to.

> That runs contrary to my personal and professional beliefs and experience. I'm in my 32nd or -3rd year of doing this, and years and years and years ago, I developed the concept or belief that it's never wise to leave out a witness, because the jury always wonders what that witness would have said.

> But, I'm not going to put on a witness that's already been beaten up, bloodied, before we even get to trial, when the very jurors have told me they won't believe him anyway. So I made a strategic decision yesterday to cut [that witness] out of the witness list. I don't like to do that. But, you folks made your own bed there. You're not going to hear the details that [the witness] could have provided us.

> Therefore, just consider that your own responses resulted in not listening to what [that witness] had to say.

Defense counsel did not object to the prosecutor's statements during the prosecutor's closing argument. Instead, defense counsel waited to object until after all of the closing arguments had concluded, the court had read the jury its instructions, and the case had been submitted to the jury. At that time, defense counsel indicated to the court:

> I would move for a mistrial based on the comments of [the prosecutor] during the closing, suggesting that the jury was the reason that we made the decision that [the

witness who was given immunity] would not testify. I believe that was really a misstatement of the situation.

The court overruled the motion for a mistrial. The court indicated that the prosecutor was only explaining to the jury his decision not to call a certain witness to testify. The court also indicated its belief that the prosecutor's comments were directly tied to defense counsel's discussion of immunity during voir dire. Additionally, the court noted, "I also note that [your motion is] probably not very timely."

On appeal, Ruegge argues that the district court erred in overruling the motion for a mistrial, because the prosecutor's comments during his closing constituted misconduct that prejudiced Ruegge's defense. Ruegge's assertion has no merit, because the motion for a mistrial was not timely made.

[7] An objection to the prosecutor's argument made after the jury has been instructed and has retired is untimely and for that reason will not be reviewed on appeal. *State v. Hernandez*, 242 Neb. 78, 493 N.W.2d 181 (1992). Here, defense counsel did not motion for a mistrial concerning the prosecutor's statements about the witness who was given immunity until after all of the closing arguments, after the court instructed the jury, and after the case had been submitted to the jury. The motion was clearly untimely, and as such, we do not review Ruegge's assertions about the motion for a mistrial on appeal.

### (ii) Reference to "Standard Defense" in Blaming Someone Else

During the State's rebuttal argument, the prosecutor stated, "[Defense counsel], in his defense of . . . Ruegge, has taken up the standard defense that I've seen throughout my career. I label it transference. He's transferred guilt from . . . Ruegge to . . . Vande Mheen and wants you to buy into that." After the prosecutor made this statement, defense counsel asked the court whether he "may . . . be heard." Then, both defense counsel and the prosecutor apparently approached the trial judge and conversed about something. However, this discussion was held off the record. As such, our record does not reflect what the parties discussed. When the discussion was over, the court noted, on the record, "Objection is overruled."

[8] We can assume from the court's statement that the "[o]bjection is overruled" that defense counsel made an objection to something. However, based on the record presented to us, we cannot, and do not, assume that defense counsel specifically objected to the prosecutor's discussion about the "standard defense," nor do we assume that defense counsel made a motion for a mistrial as a result of this discussion. See *State v. Trackwell*, 250 Neb. 46, 49, 547 N.W.2d 471, 474 (1996) (it is "incumbent upon an appellant to present a record which supports the errors assigned").

Because Ruegge's objection to the prosecutor's comments was made and discussed off the record, we conclude that Ruegge failed to preserve for appellate review his assertions concerning the State's misconduct in discussing Ruegge's "standard defense."

### (iii) Other Allegations of Prosecutorial Misconduct During Closing Argument

Ruegge did not specifically object or make a motion for a mistrial as a result of any of his remaining allegations of prosecutorial misconduct during the State's closing argument. As we discussed above, because Ruegge did not properly object or move for a mistrial, he has waived appellate review of these allegations. See *State v. Anderson and Hochstein*, 207 Neb. 51, 296 N.W.2d 440 (1980).

### 3. JURY INSTRUCTION AMENDMENT

Ruegge alleges that the district court erred in denying his request to amend proposed jury instruction No. 8. Proposed jury instruction No. 8 concerned the knowledge element of theft by receiving stolen property as defined by § 28-517. Upon our review, we conclude that Ruegge was not prejudiced by the district court's failure to amend jury instruction No. 8 and, as such, we conclude that this assignment of error has no merit.

### (a) Standard of Review

[9] Whether jury instructions are correct is a question of law, which an appellate court resolves independently of the lower court's decision. *State v. Almasaudi*, 282 Neb. 162, 802 N.W.2d 110 (2011).

### (b) Analysis

The district court's proposed jury instructions included the following instruction, which was numbered "Instruction No. 8" and which was entitled "State of Mind": "Knowledge or belief is an element of theft by receiving stolen property. In deciding whether the defendant possessed such knowledge or belief you should consider his words and acts and all of the surrounding circumstances." During the jury instruction conference held after the parties had presented all of their evidence, Ruegge requested that proposed instruction No. 8 be amended to include the following language after the language of the original, proposed instruction: "The knowledge that the property has been stolen must be subjective knowledge, proved beyond a reasonable doubt."

The district court denied Ruegge's request to amend proposed jury instruction No. 8. Specifically, the court stated:

> And I think that the instruction as written and as proposed as state of mind requires that the — or instructs the jury that knowledge or belief is an element, and then it tells the jury in deciding whether the defendant possessed such knowledge, they are to consider words, acts, et cetera. I think that, by its very definition, makes it subjective because they must determine that the defendant possessed or required the knowledge or belief. And so that is subjective.
>
> And so the wording that you want, I would consider surplusage, and that . . . instruction is refused.

Instruction No. 8 was read to the jury as originally proposed and with no amendment.

On appeal, Ruegge argues that the district court erred in refusing to amend jury instruction No. 8 and that he was prejudiced because, ultimately, "the jury was not given the proper [i]nstruction when deciding this case." Brief for appellant at 19. In his brief, Ruegge appears to assert that the district court should have included his proposed language in the jury instruction to make clear to the jury that it must find that Ruegge actually had knowledge that the generator/welder was stolen property. We conclude that Ruegge's assertion has no merit, because the jury instruction actually provided to the jury

clearly indicates that the jury must find, from the evidence presented, that Ruegge knew the property was stolen. As such, Ruegge was not prejudiced by the court's failure to amend jury instruction No. 8.

[10] To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction. *State v. Gangahar*, 9 Neb. App. 205, 609 N.W.2d 690 (2000).

[11] As we stated above, Ruegge was charged with and convicted of theft by receiving stolen property pursuant to § 28-517. Section 28-517 provides: "A person commits theft if he receives, retains, or disposes of stolen movable property of another knowing that it has been stolen, or believing that it has been stolen, unless the property is received, retained, or disposed with intention to restore it to the owner." We agree with Ruegge's basic assertion that the term "knowing," as used in § 28-517, imposes a subjective standard of knowledge. See *State v. Almasaudi*, 282 Neb. 162, 802 N.W.2d 110 (2011). Stated more simply, we agree with Ruegge that in order to convict Ruegge of theft by receiving stolen property, the State must have proven and the jury must have found that Ruegge possessed actual knowledge that the generator/welder was stolen property or believed that the property was stolen. This subjective standard of knowledge is in contrast to an objective standard of knowledge, which requires only a showing that a reasonable person in the defendant's situation would or should have known that the property was stolen. See *id*.

However, we also agree with the district court's comments at the jury instruction conference that proposed jury instruction No. 8 clearly instructed the jury that it must find that Ruegge possessed actual knowledge that the property was stolen in order to convict him. We also agree with the court's assertion that Ruegge's proposed amendment to instruction No. 8 was unnecessary "surplusage."

In jury instruction No. 8, as read to the jury, the district court instructed the jury that it must find that "the defendant

possessed [the requisite] knowledge" and that in making that finding, the jury should consider the defendant's own "words and acts and all of the surrounding circumstances." As the district court indicated, this instruction, "by its very definition," instructed the jury that it must find that Ruegge possessed a subjective knowledge that the property was stolen. As such, Ruegge's proposed amendment, which would have added only an explicit statement that the knowledge required by § 28-517 was subjective in nature, was simply not necessary.

Because the district court's instruction to the jury regarding the degree of knowledge Ruegge must have possessed to be found guilty of theft by receiving stolen property was correct and because Ruegge's proposed amendment to that instruction would not have added anything substantive, we conclude that the district court did not err in denying Ruegge's request to amend jury instruction No. 8. Ruegge cannot show that he was prejudiced in any way by the court's decision to deny his request to amend the jury instruction.

### 4. Ineffective Assistance of Trial Counsel

[12,13] Ruegge asserts that his trial counsel was ineffective in a number of respects. To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced his or her defense. *State v. Young*, 279 Neb. 602, 780 N.W.2d 28 (2010). The two-prong ineffective assistance of counsel test need not be addressed in order. *State v. Nesbitt*, 279 Neb. 355, 777 N.W.2d 821 (2010).

[14,15] When considering whether trial counsel's performance was deficient, there is a strong presumption that counsel acted reasonably. *Id*. Furthermore, trial counsel is afforded due deference to formulate trial strategy and tactics. When reviewing a claim of ineffective assistance of counsel, an appellate court will not second-guess reasonable strategic decisions by counsel. *Id*.

[16] A claim of ineffective assistance of counsel need not be dismissed merely because it is made on direct appeal. *State v. Young, supra*. The determining factor is whether the record is sufficient to adequately review the question. *Id*.

Because Ruegge has different counsel in this appeal from trial counsel, Ruegge can make a claim for ineffective assistance of trial counsel on direct appeal. See *State v. York*, 273 Neb. 660, 664, 731 N.W.2d 597, 602 (2007) ("where appellate counsel is different from trial counsel, a defendant must raise on direct appeal any issue of ineffective assistance of trial counsel which is known to the defendant or is apparent from the record, or the issue will be procedurally barred on postconviction review").

We now turn to Ruegge's specific claims.

### (a) Failure to Make Timely Motion for Mistrial

Ruegge alleges that trial counsel was ineffective in failing to make a timely motion for a mistrial after the prosecutor committed misconduct during his closing argument by explaining to the jury why he did not offer the testimony of any witness who had been given immunity. Upon our review, we conclude that Ruegge's assertion has no merit. Ruegge cannot show that he was prejudiced by counsel's failure to make a timely motion for a mistrial, because such a motion would have been unsuccessful.

As we discussed more thoroughly above, during the prosecutor's closing argument, he commented to the jury that he had decided not to offer the testimony of a particular witness who had been given immunity. He went on to inform the jury that the basis for his decision was the comments and concerns voiced by many potential jurors during voir dire that they would have a problem believing or accepting the testimony of a witness who had been previously provided with immunity. Defense counsel motioned for a mistrial as a result of the prosecutor's comments. However, the motion was made after the case was submitted to the jury and, as we concluded above, the motion was untimely and the issue was not preserved for appellate review.

Despite the untimeliness of counsel's motion for a mistrial, the district court did rule on the merits of the motion. The court overruled the motion and stated:

> I think what the [prosecutor] was referring to was the fact that upon your inquiry of the panel, they had indicated — most, if not all of them, had indicated that they would discount or more intensely scrutinize the testimony of someone that had been granted immunity. And he was basically telling them because of their concerns, as expressed pursuant to your questions on voir dire, that he made a tactical decision not to call [that witness]. And I think that's what he was referring to when he spoke to the . . . jury . . . .

We understand the district court's comments to indicate its finding that the prosecutor's remarks were simply not improper under the circumstances of this case. We agree with the district court's finding.

[17,18] Generally, in assessing allegations of prosecutorial misconduct in closing arguments, a court first determines whether the prosecutor's remarks were improper. It is then necessary to determine the extent to which the improper remarks had a prejudicial effect on the defendant's right to a fair trial. *State v. Balvin*, 18 Neb. App. 690, 791 N.W.2d 352 (2010). A mistrial is appropriate when an event occurs during the course of a trial which is of such a nature that its damaging effects would prevent a fair trial. *Id.*

In light of the thorough discussion of immunity held during voir dire, we cannot say that the prosecutor's comments to the jury about why he did not call any witness who had been given immunity were improper. Rather, it appears the prosecutor was merely trying to provide the jury with an explanation for the absence of such a witness. And, the prosecutor did not discuss what that witness would have testified to had he been called or provide any other extraneous, improper information to the jury.

Moreover, even if we were to find that the prosecutor's comments were improper, it is difficult to imagine how the comments prejudiced Ruegge in any way. And, we note that in

his brief on appeal, Ruegge does not articulate exactly why the comments were prejudicial in nature.

We conclude that if counsel had made a timely motion for a mistrial based on the prosecutor's comments, such a motion would not have been successful, because the comments were not improper and did not prejudice Ruegge. As such, Ruegge cannot demonstrate that he was prejudiced by counsel's failure to make a timely motion for a mistrial and this assertion of ineffective assistance of counsel is without merit.

### (b) Failure to Object to Alleged Instances of Prosecutorial Misconduct

Ruegge alleges that trial counsel was also ineffective in failing to object or make a motion for a mistrial as a result of the other alleged instances of prosecutorial misconduct which occurred during voir dire, the State's opening statement, and the State's closing arguments. We have detailed Ruegge's specific claims of prosecutorial misconduct in our analysis above. We do not repeat each of his claims here, because, ultimately, we conclude that our record is insufficient to review Ruegge's claims that his trial counsel was ineffective for failing to object to each of these allegations of misconduct.

[19,20] The decision about whether to make an objection during a trial has long been considered an aspect of trial strategy. See *State v. Huston*, 285 Neb. 11, 824 N.W.2d 724 (2013). In fact, the Nebraska Supreme Court has previously discussed the notion that a decision not to object could be explained by trial counsel's calculated strategy not to highlight the objectionable material. See *id*. Because the decision about whether to object is considered an aspect of trial strategy, we must consider trial counsel's strategy when reviewing his failure to object to each instance of alleged prosecutorial misconduct.

As we stated above, when reviewing claims of alleged ineffective assistance of counsel, trial counsel is afforded due deference to formulate trial strategy and tactics. See *State v. Nesbitt*, 279 Neb. 355, 777 N.W.2d 821 (2010). And, there is a strong presumption that counsel acted reasonably, and an appellate court will not second-guess reasonable strategic

decisions. See *id*. Because of this deference, the question whether the failure to object was part of counsel's trial strategy is essential to a resolution of Ruegge's ineffective assistance of counsel claims.

There is no evidence in the record that would allow us to determine whether Ruegge's trial counsel consciously chose as part of a trial strategy not to object to the alleged instances of prosecutorial misconduct identified on appeal. Therefore, because the record is insufficient to adequately review Ruegge's claims of ineffective assistance of counsel, we do not reach these claims on direct appeal.

### (c) Waiver of Argument in Support of Directed Verdict Motion

Ruegge alleges that counsel was ineffective in failing to provide to the court any argument in support of his motion for a directed verdict at the close of the State's presentation of evidence. We conclude that Ruegge's assertion is without merit, because he cannot show that he was prejudiced by counsel's actions.

Counsel did make a motion for a directed verdict on the basis of "[l]ack of evidence." However, when the court asked counsel whether he wished to "point out where [he thought] the evidence [was] lacking," counsel indicated, "I'll waive . . . ." The district court then overruled the motion for a directed verdict.

The standard for granting a motion for a directed verdict is whether, after viewing all of the evidence in the light most favorable to the State, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. See *State v. France*, 279 Neb. 49, 776 N.W.2d 510 (2009). And, as we discussed more thoroughly above, the district court properly overruled counsel's motion for a directed verdict, because the evidence presented by the State, if believed by the jury, was sufficient to establish that Ruegge was guilty of theft by receiving stolen property. Accordingly, no matter what argument defense counsel would or could have provided to the court in support of the motion for a directed verdict, his motion would have failed. Ruegge was not prejudiced by his counsel's

failure to offer any argument in support of the motion for a directed verdict.

### (d) Failure to Present Defense

Ruegge alleges that counsel was ineffective in failing to present any evidence in his defense. However, he does not specify what evidence could have been presented in his defense, nor does he indicate what witnesses could, or should, have been called to testify in his defense. Moreover, he does not allege what any additional evidence or testimony would have shown or whether it would have altered the ultimate outcome of the trial.

In order to prevail on an ineffective assistance of counsel claim, a defendant must show that his or her counsel's performance was deficient and that he or she was prejudiced by that deficient performance. *State v. Thomas*, 278 Neb. 248, 769 N.W.2d 357 (2009). Because Ruegge does not specifically allege what other evidence or testimony could, or should, have been presented in his defense at the trial, he cannot demonstrate that he was prejudiced by his counsel's failure to put on a defense. As such, this assertion has no merit.

### V. CONCLUSION

Upon our review, we affirm Ruegge's conviction for theft by receiving stolen property. We find that there was sufficient evidence presented at trial to support his conviction and that Ruegge's assertions of error on appeal are without merit.

As to Ruegge's claims of ineffective assistance of trial counsel, we find that he was not denied effective assistance of counsel when counsel failed to make a timely motion for a mistrial during the State's closing arguments, when counsel waived making an argument in support of his motion for a directed verdict, and when counsel failed to put on evidence in Ruegge's defense. We find that the record is insufficient to review the remaining grounds for Ruegge's ineffective assistance of counsel claim.

Affirmed.