IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

STATE V. LANCASTER

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,
V.
ANDREW M. LANCASTER, APPELLANT.

Filed November 26, 2013.    No. A-13-263.

Appeal from the District Court for Box Butte County: TRAVIS P. O'GORMAN, Judge. Affirmed.

Larry L. Miller for appellant.

Jon Bruning, Attorney General, and George R. Love for appellee.

INBODY, Chief Judge, and MOORE and RIEDMANN, Judges.

MOORE, Judge.

## INTRODUCTION

Andrew M. Lancaster appeals from his convictions in the district court for Box Butte County for two counts of felony child abuse. On appeal, he assigns error to the admission of certain testimony. He also asserts that he received ineffective assistance of counsel, that the court imposed excessive sentences, and that the court erred by imposing sentences of imprisonment rather than probation. Because we find no abuse of discretion in the admission of the testimony in question and in the sentences imposed, we affirm. The record on appeal is insufficient to review the ineffective assistance of counsel claim.

## BACKGROUND

Kathryn H. is the mother of two girls: A.R., born in January 2008, and T.R., born in November 2008. She is also the mother of a boy, Z.H., born in 2011. The children's fathers are not involved in their lives. At the time of trial, Kathryn had lived in Alliance, Nebraska, for almost 5 years. Kathryn has known Lancaster since middle school, and she began

- 1 -

communicating with him over the Internet in approximately 2011, while Lancaster was overseas serving in the military. Lancaster moved in with Kathryn in Alliance on May 8, 2012. Kathryn's baby, Z.H., was 7 months old when Lancaster moved in with her. Between the time of Z.H.'s birth and the time Lancaster moved in, there were no other adults living with Kathryn. From mid-May to mid-June, A.R. and T.R. were in daycare with outside daycare providers, but after that time, Lancaster became the children's primary caretaker while Kathryn was at work.

Z.H. has Down syndrome and other health issues. In mid-June 2012, Z.H. had open heart surgery in Denver, Colorado. Kathryn, Lancaster, and the children went to Denver on approximately June 17 and returned to Alliance after Z.H. was discharged on approximately July 9. On July 21, following a child welfare check, the girls were found to have bruises all over their bodies, and Lancaster was arrested.

On August 14, 2012, the State filed an information in the district court, charging Lancaster with two counts of felony child abuse in violation of Neb. Rev. Stat. § 28-707 (Cum. Supp. 2012), both of which were Class IIIA felonies. The State also charged Lancaster with one count of strangulation in violation of Neb. Rev. Stat. § 28-310.01 (Reissue 2008), a Class IV felony. The State alleged that Lancaster committed these crimes between June 1 and July 21, 2012.

A bench trial was held before the district court on January 16 through 18, 2013.

At trial, police officer Michelle Perry testified that on July 21, 2012, at approximately 8 a.m., she arrived at Kathryn's apartment in Alliance to complete a child welfare check that had been called in the night before. According to Perry, Kathryn was very hesitant to let her in the apartment. When Perry told Kathryn that she was there to do a welfare check on Kathryn's children, Kathryn told her that she had been afraid something like that would happen because the girls were hitting each other and that she was afraid to take them out in public. Kathryn eventually admitted Perry into the apartment. When they reached the girls' room, the girls appeared to be asleep. Kathryn woke the girls, and Perry immediately noticed bruising on their faces, arms, and legs. While Kathryn was still in the room, Perry asked the girls how they got the bruises, and they both responded that they hit each other. Perry asked the girls further questions to try to find out what was going on, and Kathryn left the room. According to Perry, at that point, A.R. looked directly at Perry, tilted her head back, and pointed to bruising on her neck. Perry asked what happened, at which time A.R. raised both of her hands and put them around her neck as if she was being strangled. After this testimony, the prosecutor asked Perry to demonstrate for the court what A.R. did, and Perry demonstrated without objection from Lancaster's attorney. Perry testified that after asking A.R. who had done that to her, Perry stopped questioning the girls and radioed her sergeant to come to the apartment. After his arrival, Perry's sergeant determined that further investigation was necessary. Kathryn and Lancaster then drove the children to the police department while Perry followed in her patrol car.

Police investigator Colleen Busch was called in to assist with the child abuse investigation. Busch observed multiple bruises over multiple surfaces of the girls' bodies. Throughout their contact, Kathryn made statements to Busch that the girls had been hitting one another. Busch informed Lancaster and Kathryn that she needed to conduct a forensic interview of the girls at a child advocacy center. Kathryn and Lancaster drove the children to the center where Busch interviewed both A.R. and T.R. individually. During the interviews, Busch looked

at various parts of the girls' bodies and questioned them about their bruises. Busch testified that based on her interviews of the girls, her observations of the injuries, her training and experience in the area of child abuse investigation and detection, and the girls' responses to her questions about their injuries, she formed the opinion that most of the girls' bruises were not accidental, that most of the bruises were not caused by a small child, and that the girls were in need of medical treatment. Busch testified further that based upon her interviews with and observation of the children and their explanation for the bruises, she formed the opinion that Lancaster was the main perpetrator in this case. After completing the forensic interviews, Busch took the children to the hospital for medical treatment, and Lancaster was placed under arrest. At the hospital, Busch took photographs of the girls' bruises and injuries with Perry's assistance. The photographs were admitted into evidence and show multiple bruises of varying sizes and colors all over both girls' bodies. Busch testified that because of individual variations from person to person and due to bruise locations, law enforcement and medical personnel have moved away from dating bruises by color. While testifying about pictures showing bruising on T.R.'s ear, Busch testified that she believed this bruising was consistent with child abuse. Busch testified that during her 14 years investigating child abuse cases, she had never seen bruising to the level she observed in this case. The bruising on A.R.'s legs was the most severe Busch had seen based on her observations investigating hundreds of child abuse cases. Lancaster's attorney did not object to any of the above testimony.

Larry Steele is a registered nurse and trauma coordinator who was working in the emergency room the day that Busch brought the girls to the hospital for a medical examination. Steele testified that he did a head-to-toe assessment of the girls and that because of the significant amount of bruising all over their bodies, fitting a pattern of many different injuries at many different times, he ordered x rays for the children. The girls' x rays came back "negative for bony malformations." Steele testified that he cannot identify the age of a particular bruise, but, based on his training and experience, he was able to tell the bruises on the girls were different ages because of the different colors. Steele also testified that he observed some bleeding in A.R.'s eyes which caused him to be concerned that she might have been strangled, since strangulation can cause hemorrhaging in the eyes. Steele assisted Busch in taking some of the photographs of the girls. Steele testified about certain photographs which depicted causes of concern for him and which, based on his education and experience, appeared to be consistent with intentional injuries or abuse. Lancaster's attorney did not object to any part of Steele's testimony.

Antonia Chiesa, a pediatrician, testified as an expert witness. Chiesa testified that based upon her observations and evaluations of the girls' medical records and her training, experience, and education, she formed the opinion that most of the girls' injuries were consistent with physical child abuse and were not inflicted by a child. During the course of her testimony, Chiesa reviewed the photographs taken by Busch in July 2012 and testified as to the injuries on each child that caused her concern with respect to possible physical child abuse. Chiesa testified that accidental injuries in children tend to occur in areas of "bony prominence," such as the forehead, elbow, knees, and shins. Chiesa testified that injuries on the soft tissue areas, such as the stomach, genitalia, buttocks, cheeks, ears, or neck, are more worrisome because they do not typically occur by accident. She also testified that patterns in bruises, and bruises in different

stages of healing or on different planes of the body, are possible red flags for abuse. Chiesa agreed that 3- or 4-year-old children will fight, but testified that it would be rare for children of that age to be "this violent and aggressive with each other." Chiesa did not believe it made sense that the girls caused the bruising to one another.

During cross-examination, Chiesa testified that she had read the forensic interview of the girls and that statements they made during the interview played a role in the opinion she formed. On redirect, Chiesa was asked what other statements the children made in their interview that she reviewed helped her form her opinion as to what happened. Lancaster's attorney objected on the grounds of hearsay but later withdrew this objection. Chiesa then testified that the girls reported that they were given punishment options that included spanking and choking. Chiesa found this particularly disturbing because the girls had injuries over areas that are common for spanking and injuries on the neck that appeared consistent with choking. With respect to statements made by each girl that the other girl had caused particular injuries to her, Chiesa testified that it is not uncommon for children to repeat histories that they have heard if they feel like they are not going to be protected or will get in trouble for telling the truth.

Cyndi Sample is the Nebraska Department of Health and Human Services caseworker who was assigned to the juvenile case involving A.R., T.R., and Z.H. She was called on July 21, 2012, to assist law enforcement in investigating an alleged child abuse case. Sample met Perry, Busch, and the family at the child advocacy center. Kathryn reported to Sample that the bruising was caused by the girls fighting with each other. Sample testified that due to the amount and extent of the bruising on the girls, she thought that the bruising had to have been inflicted by an adult and that it was not feasible that the girls could have inflicted such bruising on each other. Kathryn's children were subsequently removed from her home on July 27 and placed in foster care. After the girls' placement in foster care, Sample noticed a change in their physical appearance, in that they no longer had extensive bruising like she observed in July 2012. The fact that the girls did not have such bruising while they were together in foster care reinforced Sample's opinion that they did not cause most of each other's injuries. Lancaster's attorney did not object to any part of Sample's testimony.

Rita Fortner, a home visitor who was assigned to the children's case, testified that she has visited the girls weekly since 2009. Fortner testified that during her July 13, 2012, visit, she did see excessive bruising on the girls' arms that looked like it came from pinches, but she did not recall seeing any other bruising on them. Fortner did observe the girls pinching each other while she was there. Fortner also testified that she had not seen any bruising on the girls similar to that depicted in the photographic exhibits at any time over the years while visiting them and that if she had, she would have reported it. Fortner testified that the bruising depicted in a photograph of T.R.'s arm did not appear to her, based on her years of experience working in early childhood development, to be consistent with pinching inflicted by another young child. She also testified that the bruises depicted in several of the photographs did not appear accidental to her. Lancaster's attorney did not object during the course of Fortner's testimony.

Kathryn was called as a witness for the State, and Lancaster testified in his own behalf. Throughout their testimony, both Kathryn and Lancaster insisted that the girls inflicted the bruises on each other. Kathryn did admit at trial that she had not seen bruises like those pictured

on A.R.'s legs in a particular exhibit or like those pictured on T.R.'s arms in two other exhibits before Lancaster moved in with her.

Busch took followup photographs of the girls on October 5, 2012, and again on January 14, 2013, while the girls were in foster care. These photographs were also admitted into evidence and show none of the extensive bruising revealed in the earlier photographs. Busch testified that when she observed the girls on October 5, 2012, she saw no signs of any bruising similar to the bruising she observed in July, although she did observe a few child-consistent injuries of what appeared to be normal, isolated, childhood bruises. While photographing the girls in January 2013, Busch observed no injuries like those she observed the previous July.

On January 18, 2013, the district court found Lancaster guilty of both counts of felony child abuse and not guilty of strangulation. On March 4, the court sentenced Lancaster to terms of incarceration of not less than 60 months or more than 60 months on each count of felony child abuse to be served consecutively. The court gave Lancaster credit for 222 days of time served and ordered him to pay costs. Lancaster subsequently perfected his appeal to this court.

## ASSIGNMENTS OF ERROR

Lancaster asserts, consolidated and restated, that the district court erred in (1) permitting hearsay testimony from lay witnesses and the expert witness, Chiesa; (2) permitting lay witnesses to testify as experts; (3) imposing excessive sentences; and (3) imposing sentences of imprisonment rather than probation. Lancaster also asserts that he received ineffective assistance of counsel in that his trial counsel did not object to certain witness testimony.

## STANDARD OF REVIEW

Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, the admissibility of evidence is reviewed for an abuse of discretion. *State v. Castillas*, 285 Neb. 174, 826 N.W.2d 255 (2013). The standard for reviewing the admissibility of expert testimony is abuse of discretion. *State v. McClain*, 285 Neb. 537, 827 N.W.2d 814 (2013). A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *State v. McGuire*, 286 Neb. 494, 837 N.W.2d 767 (2013).

A claim of ineffective assistance of counsel need not be dismissed merely because it is made on direct appeal. Rather, the determining factor is whether the record is sufficient to adequately review the question. *Id.* An ineffective assistance of counsel claim will not be addressed on direct appeal if it requires an evidentiary hearing. *Id.*

Sentences within statutory limits will be disturbed by an appellate court only if the sentences complained of were an abuse of judicial discretion. *State v. Abdulkadir*, 286 Neb. 417, 837 N.W.2d 510 (2013). An order denying probation and imposing a sentence within the statutorily prescribed limits will not be disturbed on appeal unless there has been an abuse of discretion. *State v. Rung*, 278 Neb. 855, 774 N.W.2d 621 (2009).

ANALYSIS

*Hearsay Testimony.*

Lancaster asserts that the district court erred in permitting hearsay testimony from lay witnesses and the expert witness, Chiesa.

Neb. Rev. Stat. § 27-801 (Reissue 2008) provides, in part:

(1) A statement is (a) an oral or written assertion or (b) nonverbal conduct of a person, if it is intended by him as an assertion;

(2) A declarant is a person who makes a statement;

(3) Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted[.]

Lancaster first argues:

The alleged conduct by the minor child of re-enacting being strangled was a statement made by the minor child in response to interrogation by law enforcement. The statement was clearly taken as an assertion and was offered for the truth of the matter asserted, that the minor child had been strangled.

Brief for appellant at 13. Lancaster's argument is somewhat vague, but he is presumably referring to Perry's testimony about A.R.'s actions when Perry asked her what caused the bruising on her neck. Lancaster was not convicted of strangulation. This argument is without merit.

Lancaster next argues that the district court erred in allowing Chiesa to testify about hearsay statements made by the girls that were included in the records reviewed by Chiesa. Lancaster's attorney initially objected on the grounds of hearsay. The prosecutor responded that Lancaster had "opened the door" during Chiesa's cross-examination by asking about other statements relied on by Chiesa. Before the court could determine whether the redirect examination questions should be permitted under Neb. Rev. Stat. § 27-106 (Reissue 2008) (rule of completeness), Lancaster's attorney withdrew the objection. Failure to make a timely objection waives the right to assert prejudicial error on appeal. *State v. Watt*, 285 Neb. 647, 832 N.W.2d 459 (2013). One may not waive an error, gamble on a favorable result, and, upon obtaining an unfavorable result, assert the previously waived error. *State v. Nadeem*, 284 Neb. 513, 822 N.W.2d 372 (2012). Lancaster's argument is without merit.

*Admission of Lay Witness Testimony.*

Lancaster asserts that the district court erred in permitting certain lay witnesses to testify as experts. Specifically, he argues that Busch, Steele, Sample, and Fortner were permitted to testify to their opinions either that the bruises were not caused by the girls or that Lancaster was the individual responsible.

Neb. Rev. Stat. § 27-701 (Reissue 2008) provides:

If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue.

Lancaster's attorney did not object to the testimony from Busch, Steele, Sample, or Fortner regarding the cause of the girls' bruising. Thus, he has waived any error with respect to their testimony. See, *State v. Watt, supra*; *State v. Nadeem, supra*. We also note that to the extent that testimony from Busch and Fortner embraced the ultimate issue to be decided by the district court, "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Neb. Rev. Stat. § 27-704 (Reissue 2008). Lancaster's assignment of error is without merit.

*Ineffective Assistance of Counsel.*

Lancaster asserts that he received ineffective assistance of counsel in that his trial counsel did not object to certain witness testimony.

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must first show that counsel's performance was deficient and second, that this deficient performance actually prejudiced his or her defense. *State v. McGuire*, 286 Neb. 494, 837 N.W.2d 767 (2013). The two prongs of the ineffective assistance test under *Strickland v. Washington, supra*, deficient performance and prejudice, may be addressed in either order. *State v. McGuire, supra.*

An appellate court will not second-guess reasonable strategic decisions by counsel. *Id*. When considering whether trial counsel's performance was deficient, there is a strong presumption that counsel acted reasonably. *State v. Ruegge*, 21 Neb. App. 249, 837 N.W.2d 593 (2013). Trial counsel is afforded due deference to formulate trial strategy and tactics. When reviewing a claim of ineffective assistance of counsel, an appellate court will not second-guess reasonable strategic decisions by counsel. *Id.* The decision about whether to make an objection during a trial has long been considered an aspect of trial strategy. *Id*.

There is no evidence in the record that would allow us to determine whether Lancaster's trial counsel consciously chose as part of a trial strategy not to object to the testimony complained of by Lancaster. Accordingly, the record is insufficient to adequately review Lancaster's claims of ineffective assistance of counsel, and we do not reach them on direct appeal.

*Sentencing.*

Lancaster asserts that the district court erred in imposing sentences of imprisonment rather than probation. He also argues that the sentences imposed were excessive.

Lancaster was convicted of two counts of felony child abuse, both of which were Class IIIA felonies. See § 28-707. The district court imposed consecutive sentences of not less than 60 months nor more than 60 months. Class IIIA felonies are punishable by a maximum of 5 years' imprisonment, a $10,000 fine, or both. Neb. Rev. Stat. § 28-105 (Cum. Supp. 2012). Thus, his sentences are within the statutory limits.

When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime. *State v. McGuire, supra*. The appropriateness of a sentence is necessarily a subjective judgment

and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

The presentence investigation report shows that Lancaster was 25 years old at the time of the abuse in this case. Lancaster worked in his father's business between 2002 and 2008, received his diploma through the GED program in 2008, and served in the military between 2008 and 2012, from which he received an honorable discharge. According to a risk assessment, Lancaster was a medium-high risk to reoffend. Lancaster's criminal record is limited, but includes juvenile charges in Colorado for harassment, possession of marijuana, and third degree assault.

Taking into consideration the foregoing factors, as well as the nature of the offenses and the violence involved, the district court did not abuse its discretion in imposing sentences of incarceration rather than probation. Nor did the court impose excessive sentences. The victims of Lancaster's abuse were 3 and 4 years old and were found to have multiple bruises all over their bodies. This assignment of error is without merit.

## CONCLUSION

Lancaster's assignments of error with respect to the admission of testimony have been waived or are without merit. The record is inadequate to review his claims of ineffective assistance of counsel on direct appeal. The district court did not abuse its discretion in sentencing Lancaster.

AFFIRMED.