776 N.W.2d 510 (2009)
279 Neb. 49
STATE of Nebraska, appellee,
v.
Stephen E. FRANCE, appellant.
No. S-09-101.
Supreme Court of Nebraska.
December 24, 2009.
*512 Corey A. Burns for appellant.
Jon Bruning, Attorney General, and George R. Love, Columbus, for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
MILLER-LERMAN, J.

NATURE OF CASE
Stephen E. France appeals his convictions and sentences for first degree murder and use of a weapon to commit a felony. France asserts that the jury erred in rejecting his insanity defense and in failing to find that he acted in self-defense. He also asserts that the district court for Dawson County erred by instructing the jury that to find France acted in self-defense, the jury must find that he "reasonably" believed deadly force was necessary to defend himself. We affirm France's convictions and sentences.

STATEMENT OF FACTS
France was charged with first degree murder and use of a weapon to commit a felony in connection with the December 18, 2007, stabbing death of Dwayne R. Morrison. France and Morrison were coworkers at a haymill in Gothenburg, Nebraska. The two frequently argued with one another, particularly in the week prior to Morrison's death. On the morning of December *513 18, France and Morrison had a physical altercation in which France stabbed Morrison with a knife. Morrison died from his injuries, which included three deep stab wounds to the chest, with one stab penetrating the heart.
After charges were filed against France, the court granted France's motion for a psychological evaluation pursuant to Neb. Rev.Stat. § 29-1823 (Reissue 2008). Dr. Bruce Gutnik conducted a psychiatric evaluation and concluded that France was suffering from mental illness and was not competent to stand trial. Based on Gutnik's report, the court, on March 24, 2008, found that France was not then competent to stand trial but that there was a substantial probability he would become competent to stand trial within the foreseeable future. The court ordered France committed to the Lincoln Regional Center for appropriate treatment until his disability was removed. On August 8, the court determined, based on the opinion of Dr. Klaus Hartmann, that France was competent to stand trial.
France thereafter filed a notice of intent to rely upon a defense that he was not responsible by reason of insanity. The court granted the State's motion to require France to be examined by Hartmann to determine France's sanity at the time of Morrison's killing.
At trial, the State presented the testimony of coworkers of France and Morrison who testified regarding the animosity between the two. Jason Edgins testified that approximately 4 days before Morrison's death, he heard France say that he would like to kill Morrison. Edgins also testified that the day before his death, Morrison told Edgins he feared for his life and was going to the police to get a restraining order against France, because France had threatened to kill Morrison and his family.
Another coworker, Donald Friesenborg, testified that he heard France say "maybe half a dozen times" that he was going to kill Morrison. Two days before Morrison's death, France confronted Friesenborg at his home, because Morrison's wife had said that Friesenborg wanted France to quit his job. Friesenborg denied having made a remark regarding France's job and suggested that Morrison's wife was trying to agitate France. France told Friesenborg that Morrison abused his children and that "somebody ought to kill him." France also told Friesenborg he suspected that Morrison had sabotaged machinery at work, and France said, "I'm going to stab and kill that SOB." Morrison told Friesenborg the day before he was killed that France had threatened to kill Morrison and his family and that he planned to get a restraining order against France.
A third coworker, Tony Cañas, testified that France and Morrison argued and threatened each other on a daily basis the week prior to Morrison's death. During such arguments, Cañas heard France threaten to kill Morrison. Cañas also heard France on the telephone telling Morrison he was going to kill Morrison and his family. Two days before Morrison was killed, France told Cañas that he blamed Morrison for a fire in the mill the night before and that he was trying to borrow a gun from another coworker in order to kill Morrison.
Cañas testified that on the morning of December 18, 2007, Morrison arrived early for his daytime shift, while Cañas and France were finishing a nighttime shift. Cañas was walking toward the back door of the mill when he saw Morrison stumble out the door and fall to the ground. Cañas then saw France come through the door, straddle Morrison, and stab Morrison in the chest with a knife. France kicked Morrison and said, "I told you I was going to *514 kill you, you son of a bitch." Cañas did not see Morrison make any movement after he fell to the ground. France went back into the building, and Cañas called the 911 emergency dispatch service.
Deputy Sheriff Greg Gilg was the first law enforcement officer to arrive at the mill. Gilg saw Morrison's body and then saw France come out of the building with his hands held up and out. France was covered in "blood from head to toe." Gilg handcuffed France and secured him inside Gilg's patrol car. Gilg examined Morrison's body and determined that he was dead. After other officers arrived, Gilg placed France under arrest and took him to a hospital. A physician's assistant at the hospital determined that France had a cut on the back of his head that required stitches. Gilg heard France tell the physician's assistant that he and Morrison got into a fight and that Morrison got France down on the ground and bashed France's head into the concrete. Gilg observed other cuts and bruises on France's body, but France did not require medical attention beyond the stitches to the head. During the trip to the hospital, France told Gilg that Morrison "was basically bugging him so much that he was tired of his crap."
The pathologist who conducted the autopsy on Morrison's body testified that Morrison's death was caused by "deeply penetrating stab wounds of the trunk or torso." The wounds included three stabs to the chest caused by a knife, including one stab that went through the heart. The pathologist noted other injuries to Morrison's body, including cuts, bruises, and abrasions to the face, head, arms, hands, and legs. The pathologist opined that the injuries were contemporaneous to the stab wounds and were consistent with being defensive wounds.
France testified in his own defense. France admitted stabbing Morrison but asserted that it was in self-defense. France described various instances of conflict with Morrison over a period of years that the two had worked together. In particular, France described a machine malfunction and a fire that occurred in the mill during the week prior to December 18, 2007. France asserted that Morrison was to blame for both incidents. France did not immediately confront Morrison about the incidents but told coworkers that Morrison was to blame. France admitted that he told coworkers that Morrison "ought to be killed," but asserted he did not mean it literally and did not expect anyone to take it seriously. On December 16, France received a call from Morrison and his wife in which Morrison confronted France about France's comments that Morrison should be killed. In that call and in subsequent calls between the two on December 16, Morrison told France that coworkers wanted France to quit his job at the mill and that Morrison was going to have France arrested for making terroristic threats. France testified that Morrison called him names and threatened him; he denied that he threatened Morrison or his family. France initially testified that he did not remember telling Friesenborg he wanted to stab and kill Morrison, but on cross-examination, he admitted he told Friesenborg he was going to kill Morrison. France also admitted that he tried to borrow a gun from a coworker but instead got a knife from the same coworker; he testified that he wanted a weapon to defend himself against Morrison.
According to France, he worked the night shift on the evening of December 17, 2008. He brought the knife with him "just in case [Morrison] came in and was acting real bad or anything or wanted to hit me." France feared Morrison because of threats that Morrison had made and because Morrison was younger and larger than France. *515 Toward the end of his shift, on the morning of December 18, France was in the mill office filling out reports when Morrison walked into the office and told France, "I'm going to break your nose." France told Morrison that he wanted to settle their differences, but Morrison came at France with his fists in the air. France testified he did not run from Morrison because he had a bad knee and did not think he could escape. France pulled out the knife, Morrison grabbed France by the hand that was holding the knife, and the two wrestled. Morrison got France down on the floor, grabbed his hair, and banged his head on the floor. France did not remember clearly, but thought he stabbed Morrison while Morrison was on top of him. Morrison got up and said he was going to his car to go home, and France followed him to the door. France admitted on cross-examination that he stabbed Morrison again after he fell to the ground outside the building. France went back into the mill office and washed the blood off his hands. When law enforcement arrived at the mill, France "put [his] hands up in the air and went out and met them."
Gutnik also testified in France's defense. Gutnik diagnosed France as having schizophrenia and schizoid personality disorder. Gutnik opined that France's mental illness amplified his animosity toward Morrison, that France believed that he had to defend himself against Morrison, and that France felt that he had done the right thing by killing Morrison, because he acted in self-defense. Gutnik also opined that at the time France killed Morrison, France suffered from a mental illness and did not understand the nature and consequences of his action and did not understand the difference between right and wrong.
The State called Hartmann as a rebuttal witness. Hartmann agreed with Gutnik's opinion that France had a mental illness but differed as to whether France knew right from wrong. Hartmann opined that at the time France killed Morrison, France knew what he was doing, knew what the consequences would be, and knew that it was wrong.
The court instructed the jury on the insanity defense and on self-defense. In the self-defense instruction, the court instructed that France acted in self-defense if, inter alia, he "reasonably believed that his use of deadly force was immediately necessary to protect him against death or serious bodily harm."
The jury found France guilty of first degree murder and use of a weapon to commit a felony. By their guilty verdicts, the jury rejected France's defenses of insanity and self-defense. The court sentenced France to life imprisonment without parole on the murder conviction and to imprisonment for 15 to 20 years on the weapon conviction, with the sentences to be served consecutively.
France appeals his convictions and sentences.

ASSIGNMENTS OF ERROR
France asserts that the jury erred by (1) failing to find that he was legally insane at the time he killed Morrison and (2) failing to find that he acted in self-defense. With respect to the self-defense jury instruction, France asserts that the district court erred by instructing the jury that he must have "reasonably" believed that deadly force was necessary to defend himself against Morrison.

STANDARDS OF REVIEW
Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or *516 failure to prove a prima facie case, the standard is the same: In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction. State v. Banks, 278 Neb. 342, 771 N.W.2d 75 (2009).
Whether jury instructions given by a trial court are correct is a question of law. State v. Robinson, 278 Neb. 212, 769 N.W.2d 366 (2009). When dispositive issues on appeal present questions of law, an appellate court has an obligation to reach an independent conclusion irrespective of the decision of the court below. Id. In an appeal based on a claim of an erroneous jury instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant. Id.

ANALYSIS

The Jury Did Not Err in Rejecting France's Insanity Defense.
France first claims that the jury erred by failing to find that he was legally insane at the time he killed Morrison. We read France's assignment of error as asserting a claim that he established his insanity defense and that there was insufficient evidence to support the jury's rejection of his insanity defense. Having reviewed the record, we reject France's claim of error.
Nebraska follows the M'Naghten rule as to the defense of insanity. The test of responsibility for crime is a defendant's capacity to understand the nature of the act alleged to be criminal and the ability to distinguish between right and wrong with respect to the act. State v. McGhee, 274 Neb. 660, 742 N.W.2d 497 (2007). For an insanity defense, the insanity must be in existence at the time of the alleged criminal act. Id. A defendant who pleads that he or she is not responsible by reason of insanity has the burden to prove the defense by a preponderance of the evidence. Id. The verdict of the finder of fact on the issue of insanity will not be disturbed unless there is insufficient evidence to support such a finding. Id.
Gutnik testified in France's defense that in his opinion, at the time France killed Morrison, he suffered from a mental illness and did not understand the nature and consequences of his action or understand the difference between right and wrong. Gutnik testified that France thought he had done the right thing by killing Morrison, because he believed he was defending himself at the time of the killing. To the contrary, Hartmann testified in rebuttal that in his opinion, at the time France killed Morrison, France knew what he was doing, knew what the consequences would be, and knew that it was wrong.
The credibility and weight of witness testimony are for the jury to determine, and witness credibility is not to be reassessed on appellate review. Banks, supra. Any conflicts in the evidence or questions concerning the credibility of witnesses are for the finder of fact to resolve. State v. Branch, 277 Neb. 738, 764 N.W.2d 867 (2009). The jury apparently believed Hartmann's testimony over Gutnik's. By rejecting France's insanity defense, the jury determined that France failed to carry his burden of establishing insanity.
The record contains sufficient evidence for the jury to have found that France was not insane at the time he killed Morrison. *517 France's assignment of error regarding the insanity defense is without merit.

The District Court Did Not Err by Instructing That France Needed to Reasonably Believe That Self-Defense Was Necessary, and the Jury Did Not Err in Rejecting France's Claim of Self-Defense.
France next asserts that the jury erred by failing to find that he acted in self-defense when he killed Morrison. We read France's assignment of error as asserting the argument that he established his claim of self-defense and that there was insufficient evidence to support a finding that he did not act in self-defense. France also claims that the district court erred when it instructed the jury that in order to find that France acted in self-defense, it must find that he "reasonably" believed that deadly force was necessary to defend himself. We conclude that the court did not err in so instructing the jury, and having reviewed the record, we find no error in the jury's determination that France did not act in self-defense.
Self-defense is a statutorily affirmative defense in Nebraska. State v. Iromuanya, 272 Neb. 178, 719 N.W.2d 263 (2006). Neb.Rev.Stat. § 28-1409 (Reissue 2008) provides:
(1) ... [T]he use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.
. . . .
(4) The use of deadly force shall not be justifiable under this section unless the actor believes that such force is necessary to protect himself against death, serious bodily harm, kidnapping or sexual intercourse compelled by force or threat ....
We have repeatedly stated that to successfully assert the claim of self-defense, one must, inter alia, have a reasonable and good faith belief in the necessity of using force. See, Iromuanya, supra; State v. Faust, 265 Neb. 845, 660 N.W.2d 844 (2003), disapproved on other grounds, State v. McCulloch, 274 Neb. 636, 742 N.W.2d 727 (2007); State v. Urbano, 256 Neb. 194, 589 N.W.2d 144 (1999). In the present case, the court instructed the jury consistent with such precedent. The court instructed the jury that based on the evidence, it should find France acted in self-defense if, inter alia, he "reasonably believed that his use of deadly force was immediately necessary to protect him against death or serious bodily harm."
France argues that the court erred by instructing that he must have "reasonably" believed deadly force was necessary, because § 28-1409 requires only that "the actor believes that such force is necessary" and does not require that such belief be reasonable. He asserts that this court improperly read a reasonableness requirement into the statute in State v. Eagle Thunder, 201 Neb. 206, 266 N.W.2d 755 (1978).
This court rejected the same argument in State v. Stueben, 240 Neb. 170, 481 N.W.2d 178 (1992). We noted in Stueben that the reasonable belief requirement appeared to have originated in Housh v. State, 43 Neb. 163, 61 N.W. 571 (1895), and that the requirement was read into § 28-1409 after its enactment. This court stated in Stueben:
Though there is justification for the position that a simple, honest belief is all that is required by § 28-1409, which has its origin in the Model Penal Code, this court, since it was not specifically required to abandon the reasonable belief standard, declined to do so in a series of cases following the adoption of the statute. *518 See, State v. Brown, 235 Neb. 374, 455 N.W.2d 547 (1990); State v. Graham, 234 Neb. 275, 450 N.W.2d 673 (1990); State v. Cowan, 204 Neb. 708, 285 N.W.2d 113 (1979); State v. Eagle Thunder, 201 Neb. 206, 266 N.W.2d 755 (1978).
The Legislature has adhered to our construction for 20 years, and we are not constrained to abandon it now.
240 Neb. at 174, 481 N.W.2d at 182.
We note that in the 17 years since Stueben, we have reiterated the reasonable belief requirement, see Iromuanya, supra; Faust, supra; and Urbano, supra, and the Legislature has not acted to amend § 28-1409 in response to such continued construction. Ordinarily, when an appellate court judicially construes a statute and that construction fails to evoke an amendment, it is presumed that the Legislature has acquiesced in the court's determination of the Legislature's intent. Lagemann v. Nebraska Methodist Hosp., 277 Neb. 335, 762 N.W.2d 51 (2009). We conclude that a reasonable belief that force is necessary is required to successfully assert a self-defense claim. Therefore, the court did not err by instructing that France must have reasonably believed that deadly force was necessary to establish his claim of self-defense.
France had the initial burden of going forward with evidence of self-defense; after he did so, the State had the burden to prove that he did not act in self-defense. See, Urbano, supra; State v. Kinser, 252 Neb. 600, 567 N.W.2d 287 (1997). With regard to sufficiency of the evidence, we note that although France testified that he acted in self-defense, there was also evidence from which the jury could have found that he planned to kill Morrison, contradicting his claim of self-defense. Such evidence included testimony by coworkers that in the days prior to the killing, France made threats to Morrison that he was going to kill him and that France told coworkers he wanted to or was going to kill Morrison and was going to borrow a gun to do so. One coworker, Cañas, testified that he saw France stab Morrison in the chest with a knife after Morrison had fallen to the ground and that France kicked Morrison and said, "I told you I was going to kill you, you son of a bitch." In addition, France testified that after he initially stabbed Morrison, Morrison got up and said he was going to go home. France admitted that he followed Morrison to the door and that he stabbed Morrison in the chest after Morrison had fallen to the ground on his way out of the building. From such evidence, the jury could reasonably conclude that France had planned to kill Morrison and that the killing was not in self-defense.
The credibility and weight of witness testimony are for the jury to determine, and witness credibility is not to be reassessed on appellate review. State v. Banks, 278 Neb. 342, 771 N.W.2d 75 (2009). Any conflicts in the evidence or questions concerning the credibility of witnesses are for the finder of fact to resolve. State v. Branch, 277 Neb. 738, 764 N.W.2d 867 (2009). Because it found France guilty, the jury apparently disbelieved France's assertion that he acted in self-defense. Further, there was sufficient evidence to support a finding that France did not act in self-defense, and we will not reassess the jury's finding on appeal. France's assignments of error regarding self-defense are without merit.

CONCLUSION
We conclude that the district court did not err in its self-defense instruction and that given the evidence, there was no error in the jury's findings that France was not legally insane and that he was not acting *519 in self-defense when he killed Morrison. We therefore affirm France's convictions and sentences.
AFFIRMED.