IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

STATE V. WINSTON

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

MARCUS D. WINSTON, APPELLANT.

Filed December 20, 2022.    No. A-21-941.

Appeal from the District Court for Lancaster County: KEVIN R. MCMANAMAN, Judge. Affirmed.

Jeffery A. Pickens, of Nebraska Commission on Public Advocacy, for appellant.

Douglas J. Peterson, Attorney General, and Stacy M. Foust for appellee.

PIRTLE, Chief Judge, and ARTERBURN and WELCH, Judges.

PIRTLE, Chief Judge.

### INTRODUCTION

Marcus D. Winston appeals from the district court for Lancaster County wherein he was tried and convicted of sudden quarrel manslaughter and use of a firearm to commit a felony. Winston assigns that the district court's instructions to the jury constituted plain error in three respects, and he argues that his trial counsel was ineffective for failing to object to two of those errors. Further, Winston assigns that the prosecution committed misconduct in referring to Winston by a nickname that is considered a racial slur, and, similarly, Winston argues his trial counsel was ineffective for failing to object to such conduct. For the reasons that follow, we affirm.

### BACKGROUND

On August 13, 2020, the State filed an information charging Winston with first degree murder (count 1) and use of a firearm to commit a felony (count 2). The information alleged that,

on or about March 15, 2020, Winston shot and killed an individual we will refer to as T.M. The evidence at trial reflected that an altercation occurred outside Main Street Bar in Lincoln, Nebraska, involving Winston and his cousin, Nathaniel Love, on the one hand, and T.M. and his cousin, Ray Gordon, on the other. Winston was eventually knocked to the ground, at which point he observed an ongoing struggle between T.M. and Love. Winston pulled a gun and fired four shots in T.M.'s direction. T.M. was struck by two bullets and collapsed at the scene. Winston and Love fled the scene, and T.M. was later pronounced dead at the hospital.

Throughout the trial, the prosecution and many of the witnesses referred to Winston by his nickname, "Spook" or "Spookzilla." Winston confirmed on the record that his "nickname" was "Spook or Spookzilla," and he testified that "everybody," including his mother, calls him by one of those names. Winston did not object to the use of his nickname at trial, and defense counsel even referred to Winston by his nickname on multiple occasions.

The defense's theory of the case at trial was that Winston's actions in shooting T.M. were justified either in self-defense or in defense of Love. On count 1, the district court instructed the jury on first degree murder, as well as the lesser-included crimes of second degree murder and sudden quarrel manslaughter. With regard to sudden quarrel manslaughter, the instruction provided that the State must prove Winston killed T.M. "intentionally, without malice upon a sudden quarrel." The court also instructed the jury on the affirmative defenses of self-defense and defense of another, which instructions provided that Winston must have "reasonably believed" that deadly force was necessary to protect himself or Love from serious bodily harm or death. On count 2, the jury was instructed that any of the three crimes alleged in count 1, including sudden quarrel manslaughter, could serve as the predicate for the crime of using a firearm to commit a felony. Winston did not object to any of the proposed jury instructions.

The jury ultimately found Winston guilty of sudden quarrel manslaughter and use of a firearm to commit a felony. Following a presentence investigation and hearing, the district court sentenced Winston to a term of 19 to 20 years of incarceration on count 1 and 5 to 30 years of incarceration on count 2, which sentences were to be served consecutively. Winston appealed.

## ASSIGNMENTS OF ERROR

Winston assigns, restated and renumbered, that the district court committed plain error in (1) instructing the jury on sudden quarrel manslaughter, (2) instructing the jury on use of a firearm to commit a felony, and (3) instructing the jury on defense of another. Winston also raises two claims of ineffective assistance of trial counsel for failing to object to the first and second alleged errors. Winston further assigns plain error in the prosecution's use of Winston's nickname, "Spook" or "Spookzilla," and Winston raises a third claim of ineffective assistance of counsel for failing to object thereto.

## STANDARD OF REVIEW

An appellate court may find plain error on appeal when an error unasserted or uncomplained of at trial, but plainly evident from the record, prejudicially affects a litigant's substantial right and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process. *State v. Childs*, 309 Neb. 427, 960 N.W.2d 585 (2021). Generally, we will find plain error only when a miscarriage of justice would otherwise occur. *Id.* When a

defendant has not preserved a claim of prosecutorial misconduct for direct appeal, we will review the record only for plain error. *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019).

The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved on direct appeal; the determining factor is whether the record is sufficient to adequately review the question. *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022). The record is sufficient to resolve on direct appeal a claim of ineffective assistance of counsel if the record affirmatively proves or rebuts either deficiency or prejudice with respect to the defendant's claims. *Id*.

## ANALYSIS

*Sudden Quarrel Manslaughter.*

Winston first assigns that the district court committed plain error in instructing the jury that Winston committed sudden quarrel manslaughter if he killed T.M. "intentionally, without malice upon a sudden quarrel." Winston points out that malice was defined as "intentionally doing a wrongful act without just cause or excuse." Winston does not challenge the definition of malice, but he argues that simply inserting that definition into the manslaughter instruction creates an inconsistency. Winston argues the jury was effectively instructed that Winston must have killed T.M. "intentionally, without [intentionally doing a wrongful act without just cause or excuse]," or, as Winston would put it, that he must have killed T.M. intentionally, without intent. We disagree with Winston's interpretation of the jury instruction for sudden quarrel manslaughter.

Neb. Rev. Stat. § 28-305 (Reissue 2016) provides that a person commits manslaughter if he or she (1) kills another without malice upon a sudden quarrel or (2) causes the death of another unintentionally while in the commission of an unlawful act. In construing a prior version of § 28-305, the Nebraska Supreme Court long ago held that the manslaughter statute did not alter the common law definition of that crime, which contemplated two distinct classes of manslaughter. See *Boche v. State*, 84 Neb. 845, 122 N.W. 72 (1909). With regard to sudden quarrel manslaughter, which is the class at issue in the present case, the court held that "the homicide must have been intentional, but in sudden passion or heat of blood caused by a reasonable provocation and without malice." *Id.* at 75. The second class of manslaughter required the killing to be "unintentional, but caused while . . . committing some act prohibited by law." *Id.*

Thereafter, in *State v. Pettit*, 233 Neb. 436, 445 N.W.2d 890 (1989), the court noted that the statute was silent with regard to whether "intent to kill" was an element of sudden quarrel manslaughter. However, the court again emphasized that historical definitions of sudden quarrel manslaughter required an intentional killing and that "adequate legal provocation" (i.e., the sudden quarrel) negated the element of malice and reduced an unlawful killing from murder to manslaughter. Thus, the court held that "in relation to manslaughter, a sudden quarrel is a legally recognized and sufficient provocation which causes a reasonable person to lose normal self-control." *Id*. at 454, 445 N.W.2d at 901. As such, the court reaffirmed the holding from *Boche* that sudden quarrel manslaughter is an intentional killing, committed without malice and upon a reasonable provocation.

The court reversed course in *State v. Jones*, 245 Neb. 821, 830, 515 N.W.2d 654, 659 (1994), when it concluded that "[s]ince our statutes define manslaughter as a killing without malice, there is no requirement of an intention to kill in committing manslaughter." Thus, the court

held that the distinction between second degree murder and sudden quarrel manslaughter was simply the presence or absence of an intent to kill. However, the court reversed course again in *State v. Smith*, 282 Neb. 720, 806 N.W.2d 383 (2011), when it reinstated the holdings from *Pettit* and *Boche* that sudden quarrel manslaughter is an intentional killing committed without malice.

The *Smith* court explicitly rejected the conclusion from *Jones* that "without malice" means "without intention" in the context of sudden quarrel manslaughter. The court explained that a plain reading of the statute made clear that the term "without malice" applied to both classes of manslaughter, whereas, the term "unintentional" applied only to the second class of "unlawful act" manslaughter. Accordingly, while unlawful act manslaughter was considered to be without malice on account of the absence of intent, sudden quarrel manslaughter was considered to be without malice on account of a "legally recognized provocation, i.e., the sudden quarrel." *State v. Smith*, 282 Neb. at 732, 806 N.W.2d at 393. Winston does not challenge this interpretation of *Smith*. Rather, Winston advocates for a departure from *Smith* and a return to the holding in *Jones*. However, unless and until the Supreme Court decides to do so, we are bound to follow the rule clearly articulated in *Smith*. See *State v. LeGrand*, 249 Neb. 1, 541 N.W.2d 380 (1995) (Nebraska Court of Appeals does not have authority to reverse holdings of the Nebraska Supreme Court).

Under the holding in *Smith*, the perceived inconsistency Winston complains of in the manslaughter jury instruction is resolved. The jury was instructed that Winston must have killed T.M. "intentionally, without malice upon a sudden quarrel." In interpreting this instruction, Winston conflates the absence of malice with the absence of intent, which is the precise error committed in *Jones* and overruled in *Smith*. The *Smith* court made clear that, at least in the context of sudden quarrel manslaughter, the absence of malice is more aptly characterized, not as the absence of intent, but as the presence of a legally recognized provocation, i.e., the sudden quarrel. Accordingly, we find no plain error in the jury instruction for sudden quarrel manslaughter, and, consequently, we conclude that the record affirmatively rebuts Winston's claim that trial counsel was ineffective in failing to object thereto.

*Use of Firearm to Commit Felony.*

Winston next assigns that the district court committed plain error in instructing the jury on count 2, use of a firearm to commit a felony. Winston's argument relies inextricably on his argument above challenging the manslaughter instruction. Because Winston believes that sudden quarrel manslaughter is an unintentional killing, he argues that his conviction for sudden quarrel manslaughter was not a proper predicate for use of a firearm to commit a felony. See *State v. Pruett*, 263 Neb. 99, 638 N.W.2d 809 (2002) (unintentional crime cannot serve as predicate for use of weapon to commit felony).

However, for the reasons already discussed, we reject Winston's interpretation of the crime of sudden quarrel manslaughter. Rather, it is settled law that sudden quarrel manslaughter is an intentional killing, such that Winston's conviction of that crime was a proper predicate for the crime of use of a firearm to commit a felony. Having found no plain error in the use of a firearm to commit a felony jury instruction, we also conclude that the record affirmatively rebuts Winston's claim that trial counsel was ineffective for failing to object thereto.

*Defense of Another.*

Winston next assigns that the district court committed plain error in instructing the jury on the affirmative defense for defense of another. Winston argues the court erroneously employed an "objective standard" when the Legislature "clearly intended a subjective standard." Brief for appellant at 39. Winston emphasizes that Neb. Rev. Stat. § 28-1410 (Reissue 2016) provides for the use of force according to the circumstances as the actor "believes" them to be, whereas, the jury was instructed that such belief must also be "reasonable."

The Supreme Court has been clear that "nothing in the justification for the use of force act," which includes § 28-1410, has changed the common law rule that "the belief that the use of force is necessary must be reasonable and in good faith." *State v. Cowan*, 204 Neb. 708, 710, 285 N.W.2d 113, 114 (1979). See, also, *State v. France*, 279 Neb. 49, 776 N.W.2d 510 (2009) (collecting cases upholding objective "reasonable belief" standard); *State v. Stueben*, 240 Neb. 170, 481 N.W.2d 178 (1992) (Legislature has adhered to our construction for 20 years, and we are not constrained to abandon it now). Accordingly, we reject Winston's assertion that § 28-1410 contemplates a subjective as opposed to an objective standard, and we find no plain error in the defense of another jury instruction.

*Prosecutorial Misconduct.*

Winston lastly assigns plain error in the prosecution's use of his nickname, "Spook" or "Spookzilla," in lieu of Winston's actual name. Winston is African American, and he argues that the only reasonable explanation for the prosecution's "repeated and gratuitous" use of those terms was to "dehumanize" Winston and prejudice the jury against him. Brief for appellant at 41. However, the record reflects that the prosecution's use of those terms was intended, not to dehumanize Winston or inflame the jury, but to aid the jury in following the evidence, as many of the witnesses knew and referred to Winston by one of his nicknames.

Prosecutors are charged with the duty to conduct criminal trials in a manner that provides the accused with a fair and impartial trial. *State v. Cooke*, 311 Neb. 511, 973 N.W.2d 658 (2022). Because prosecutors are held to a high standard for a wide range of duties, the term "prosecutorial misconduct" cannot be neatly defined. *Id.* Generally, prosecutorial misconduct encompasses conduct that violates legal or ethical standards for various contexts because the conduct will or may undermine a defendant's right to a fair trial. *Id.* In assessing allegations of prosecutorial misconduct based on prosecutorial remarks, a court first determines whether the prosecutor's remarks were improper. *Id.* Next, a reviewing court must determine the extent to which the improper remarks had a prejudicial effect on the defendant's right to a fair trial. *Id.* A prosecutor's conduct that does not mislead and unduly influence the jury does not constitute misconduct. *State v. Childs*, 309 Neb. 427, 960 N.W.2d 585 (2021).

There was no dispute in the present case that many of the witnesses knew Winston by the nicknames "Spook" or "Spookzilla." Winston himself testified that those were nicknames of his and that "everybody," including his mother, referred to him by those names. The prosecution introduced those terms to the jury, not to mislead or unduly influence the jury, but for the express purpose of preparing the jury to hear witnesses identify Winston by those names. The prosecution similarly identified other individuals involved in this case by their nicknames, and defense counsel adopted the same practice when it was convenient to do so. Winston himself did not object to the

use of his nickname at trial, and his defense counsel even referred to Winston by his nickname on multiple occasions. The fact that Winston's admitted nicknames also can be construed in other settings as racial slurs does not, in and of itself, render the prosecution's use of those terms improper. In this case, we find no plain error in the prosecution's use of Winston's nicknames, and we thus conclude that the record affirmatively rebuts Winston's claim that trial counsel was ineffective for failing to object to that practice.

## CONCLUSION

For the foregoing reasons, we affirm Winston's convictions and sentences, and we conclude that Winston's claims of ineffective assistance of trial counsel are affirmatively refuted by the record.

AFFIRMED.